UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.:  1:20-cv-24428

DANIEL GATHERS,

       Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINES,

       Defendant.
_____/

## COMPLAINT

COMES NOW Plaintiff, DANIEL GATHERS, by and through the undersigned counsel, and sues Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES, and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This is an action for damages which exceeds Seventy-Five Thousand Dollars ($75,000.00), and the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1333 and the General Maritime Laws of the United States.

3. Venue is proper in this District pursuant to the venue selection clause in the Passenger Contract Ticket.

4. At all times material hereto, Plaintiff, DANIEL GATHERS, was a citizen and resident of the Charleston, Charleston County, South Carolina.

5. At all times material hereto, Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES (hereinafter "CARNIVAL"), had a principal place of business in Miami-Dade County, Florida, and at all times was the owner/operator of the vessel, Carnival Sunshine.

## GENERAL ALLEGATIONS

6. On or about October 26, 2019, Plaintiff, DANIEL GATHERS, was a ticketed passenger on board the CARNIVAL cruise vessel, Carnival Sunshine.

7. On or about October 31, 2019, Defendant, CARNIVAL, by and through its agents and employees, allowed a foreign transitory liquid on the floor to exist for a period of time sufficient to put CARNIVAL, by and through its agents, on actual or constructive notice of its existence.

8. Alternatively, Defendant, CARNIVAL, created the immediately aforementioned hazardous condition by and through its agent employees by spilling, dripping, or otherwise allowing said liquid to fall to and remain on the ground.

9. Alternatively, CARNIVAL, created, maintained, and allowed to exist other slip or trip hazards in the walking area deck three of the vessel, near the shore excursion desk by and through its agent employees.

10. On or about October 31, 2019, Plaintiff, DANIEL GATHERS, sustained a slip and fall on the foreign transitory liquid on deck three of the vessel near the shore excursion desk.

11. Alternatively, Plaintiff's fall was caused by other slip and trip hazards to be determined via the discovery process.

12. Thereafter, Plaintiff, DANIEL GATHERS, was abruptly moved by ship staff and personnel from the incident location to the infirmary in violation of well-known spinal immobilization protocols, said protocols being necessary and appropriate given the symptoms Plaintiff, DANIEL GATHERS, exhibited while still on the floor.

13. While in the infirmary, Plaintiff, DANIEL GATHERS, underwent a full assessment which revealed that he was exhibiting all signs and symptoms of spinal cord injury. CARNIVAL's onboard personnel failed to initiate numerous measures called for by generally accepted spinal cord injury protocol.

14. Six hours after the initial assessment, CARNIVAL's medical staff held a telemedicine conference with an onshore neurosurgeon with regard to Plaintiff's, DANIEL GATHERS, care and treatment.

15. Despite clear advice from the onshore neurosurgeon to continue cervical spine immobilization and raise the Plaintiff's Mean Arterial Pressure ("MAP") above 80mmH in order to perfuse the spinal cord, CARNIVAL's onboard personnel explicitly disregarded these important instructions and failed to communicate them to subsequent medical providers and transportation companies described below.

16. During the late evening of October 31, 2019, Plaintiff, DANIEL GATHERS, was transferred off of the ship and onto a Coast Guard vessel for transport to King Edward Hospital, Bermuda.

17.     On or about November 1, 2019, Plaintiff, DANIEL GATHERS, was transported from Bermuda to Medical University of South Carolina ("MUSC") via a Jet ICU ambulance which Defendant, CARNIVAL, was aware would be used for transporting Plaintiff, DANIEL GATHERS, and with which Defendant, CARNIVAL, communicated with regarding Plaintiff's, DANIEL GATHERS, condition.

18.     Notably, CARNIVAL's medical personnel never communicated the onshore neurosurgeon's instructions to either the Coast Guard, King Edward Hospital, or Jet ICU regarding the need to keep the Plaintiff's MAP Mean Arterial Pressure ("MAP") above 80mmHg so that the spinal cord would be perfused.

19.     By the time Plaintiff, DANIEL GATHERS, arrived at MUSC, Plaintiff, DANIEL GATHERS, was fully quadriplegic, a condition which has not changed to date despite surgery and extensive rehabilitation efforts.

## COUNT I:
## NEGLIGENCE AGAINST CARNIVAL CRUISE LINE

Plaintiff, DANIEL GATHERS, readopts and realleges each and every allegation contained in paragraphs one (1) through nineteen (19) as though fully set forth herein and further alleges as follows:

20.     At all times material hereto, Defendant, CARNIVAL, by and through its agents, apparent agents, servants, and/or employees, was negligent in its duty to maintain, operate, and/or control the decks of the Carnival Sunshine and breached its duty of care to Plaintiff,

4

DANIEL GATHERS, as a business invitee and/or licensee on the said premises, in the following regard:

    (a)    failing to maintain the premises in a reasonably safe condition so as to prevent injury to individuals, specifically, the Plaintiff;

    (b)    failing to warn the Plaintiff, of any dangerous activities or conditions that existed on the premises, which Defendant knew or should have known existed;

    (c)    failing to inspect the premises so as to discover any dangerous condition which Defendant knew or should have known existed;

    (d)    failing to establish and follow reasonable and safe procedures for safely supplying beverage services on the subject deck to prevent and/or remedy liquids on the deck surfaces;

    (e)    failing to provide reasonably safe premises for persons who were lawfully present there, including the Plaintiff;

    (f)    failing to provide reasonable supervision concerning the safe maintenance and control of the premises; and

    (g)    failing to retain, consult, and hire competent employees, agents, apparent agents, and/or servants in connection with the maintenance of the premises.

21.    As a direct, proximate, and foreseeable result of the negligence of Defendant, CARNIVAL, Plaintiff, DANIEL GATHERS, was injured in and about his body and/or aggravated a pre-existing condition or injury, suffered pain therefrom, incurred medical and related expenses in the treatment of his injuries, suffered physical handicap, loss of wages, and impairment of work ability, sustained permanent injuries within a reasonable degree of medical

probability and/or permanent loss of bodily function, and has lost the capacity for the enjoyment of life.

22.     In that the injuries suffered by Plaintiff, DANIEL GATHERS, are continuing in nature, he will continue to suffer pain, physical handicap, and permanent injury in the future and will be further compelled to expend great sums for medical care and related treatment for those injuries.

**WHEREFORE**, Plaintiff, DANIEL GATHERS, demands judgment against Defendant, CARNIVAL, for compensatory damages, including prejudgment interest, costs, and all damages allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

### COUNT II:
### NEGLIGENT MEDICAL CARE AND TREATMENT

Plaintiff, DANIEL GATHERS, readopts and realleges each and every allegation contained in paragraphs one (1) through nineteen (19) as though fully set forth herein and further alleges as follows:

23.     At all times material hereto, Defendant, CARNIVAL, and its shipboard employees, agents, and/or apparent agents owed a duty to the Plaintiff, DANIEL GATHERS, to provide prompt and appropriate medical care in response to the symptoms which the Plaintiff presented to the Defendant.

24.     Defendant, CARNIVAL, by and through its employees, including the ship's nurses and physicians, breached the duty of care which it owed to Plaintiff, DANIEL GATHERS, and was negligent in one or more of the following manner:

(a) Defendant, CARNIVAL, failed to properly assess the condition of the Plaintiff, DANIEL GATHERS;

(b) Defendant, CARNIVAL, violated spinal immobilization procedures immediately after the Plaintiff's serious fall;

(c) After making a diagnosis of cervical spine damage, Defendant's, CARNIVAL, ship's physician and medical personnel failed to take the appropriate action to treat the Plaintiff while he was on the vessel;

(d) Defendant, CARNIVAL, by and through its medical personnel failed to adequately use diagnostic equipment to appropriately assess the Plaintiff's condition;

(e) Defendant, CARNIVAL, by and through its medical personnel failed to implement direct and appropriate orders received from an onshore neurosurgeon;

(f) That Defendant, CARNIVAL, by and through its medical personnel failed to communicate direct and appropriate orders received from an onshore neurosurgeon to subsequent medical providers and handlers including the Coast Guard, St. Edwards Hospital, and Jet ICU; and

(g) That Defendant, CARNIVAL, failed to make the proper medical decision to promptly evacuate the Plaintiff from the vessel to a shore-side hospital in a timely manner for treatment of his injury.

25. As a direct and proximate result of the negligence of Defendant, CARNIVAL, as described above, Plaintiff, DANIEL GATHERS, suffered extensive damage to his spinal cord, which is permanent and will require ongoing treatment in the future.

26. As a further result of Defendant's, CARNIVAL, negligence, Plaintiff, DANIEL GATHERS, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of capacity to earn money, and aggravation of a known or unknown previously existing condition. The losses are either permanent or continuing in nature and the Plaintiff will continue to suffer the losses in the future.

**WHEREFORE**, Plaintiff, DANIEL GATHERS, demands judgment against Defendant, CARNIVAL, for compensatory damages, including prejudgment interest, costs, and all damages allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

### COUNT III:
### ACTUAL AGENCY

Plaintiff, DANIEL GATHERS, adopts and realleges each and every allegation contained in paragraphs one (1) through nineteen (19) and twenty-one (21) through twenty-four (24) as though fully set forth herein and further alleges as follows:

27. At all times material hereto, the ship's physician(s) and other medical personnel who treated the Plaintiff were direct employees and/or actual agents of Defendant, CARNIVAL, and were acting within the scope and course of their employment with CARNIVAL when treating the Plaintiff.

28. The employment relationship existed as a result of a written agreement, which provided that Defendant, CARNIVAL, had control over the duties and practice of the ship's physician(s).

29. The control which created the employment relationship included, but was not necessarily limited to, the following:

   (a) CARNIVAL had the duty to hire and fire the shipboard physicians and medical staff;

   (b) CARNIVAL had the power to determine the working hours of the ship's physicians and other medical personnel;

   (c) CARNIVAL had the right to transfer its physicians and other medical personnel to and from any of its vessels at its discretion;

   (d) While under contract to CARNIVAL, the physician was not permitted to practice medicine either on his own or for any other entity;

   (e) The subject physicians and medical personal conducted their practice onboard the vessel and within the medical center, which was provided by CARNIVAL, including all equipment and medicines.

30. The Plaintiff, DANIEL GATHERS, was charged for medical services as determined by Defendant, CARNIVAL. None of the charges made to the Plaintiff, DANIEL GATHERS, were received by the ship's doctor, who instead was paid a salary by Defendant, CARNIVAL, as its employee.

**WHEREFORE**, Plaintiff, DANIEL GATHERS, demands judgment against Defendant, CARNIVAL, for compensatory damages, including prejudgment interest, costs, and all damages


allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

### COUNT IV: NEGLIGENE OF CARNIVAL
### BASED UPON APPARENT AGENCY

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through nineteen (19) and twenty-one (21) through twenty-four (24) as though fully set forth herein, and further alleges as follows:

31. At all times material, Defendant, CARNIVAL, held out its medical staff, including its doctors and nurses, as being its employees who work in the Defendant's "medical centers" on the vessel. Defendant, CARNIVAL, promotes its medical staff and represents them as being their employees through brochures, internet advertising, and on the vessel. Defendant, CARNIVAL, held out its staff, including the ships physicians and medical personnel as being direct employees or its actual agents.

32. Defendant, CARNIVAL, promotes the idea that the medical staff who work in its "medical centers" are employed by the cruise line as part of a marketing tool to induce passengers such as the Plaintiff to buy cruises on its ships, particularly because the cruise line goes to various foreign ports which may not have adequate medical care.

33. Defendant, CARNIVAL, manifested to Plaintiff, DANIEL GATHERS, in this case that its medical staff, including its shipboard doctors and nurses, were acting as its employees and/or actual agents in various ways, including, but not limited to, the following:

    (a)    the doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers";

      (b)      the "medical centers" are owned and operated by Defendant, CARNIVAL, which pays to stock the "medical centers" with all supplies, various medicines, and equipment;

      (c)      the passenger is billed directly by Defendant, CARNIVAL, whereas the "medical staff," including the doctor and nurse, are paid salaries by Defendant, CARNIVAL, to work in the "medical centers."

34. The medical staff in this case, including its shipboard physicians and nurses, were given uniforms to wear which include name tags and which have Defendant's, CARNIVAL, name and logo. Said uniforms were required by Defendant, CARNIVAL, to be worn by the doctor and nurse.

35. The doctor is considered to be an officer on board the vessel and a member of the crew and was introduced to the passengers as one of the ship's officers.

36. Both the ship's doctor and the nurses were held out to the passengers by Defendant, CARNIVAL, as being members of the ship's crew.

37. Defendant, CARNIVAL, put the ship's physicians and nurses under the command of the ship's superior officers, including the master of the ship.

38. The cruise line represents to immigration authorities that the physicians and nurses are members of the ship's crew.

39. Both the ship's doctors and nurses are permitted to eat with the ship's crew.

40. The ship's physicians and nurses provide services in the ship's "medical centers" and the Plaintiff, DANIEL GATHERS, was required to go to the ship's medical center to be seen for his symptoms.

41. At the time of Plaintiff's, DANIEL GATHERS, injury, Plaintiff was seen and examined by the ship's nurses and/or physicians.

42. Based on the foregoing, Plaintiff, DANIEL GATHERS, believed, and was reasonable in his belief, that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of Defendant, CARNIVAL, and was never given any reason to believe otherwise.

43. As a result of Plaintiff's, DANIEL GATHERS, reliance upon Defendant's, CARNIVAL, medical staff, the Plaintiff's status was not properly diagnosed and/or managed and, as a result, Plaintiff's condition severely deteriorated and he has now sustained serious and permanent damage to his spinal cord as heretofore described.

44. Defendant, CARNIVAL, is liable to Plaintiff, DANIEL GATHERS, for any and all damages as a result of negligent medical care by the ship's physicians and/or nurses under the theory of apparent agency.

**WHEREFORE**, Plaintiff, DANIEL GATHERS, demands judgment against Defendant, CARNIVAL, for compensatory damages, including prejudgment interest, costs, and all damages allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

Dated: October 28, 2020.

KRUPNICK CAMPBELL MALONE
BUSER SLAMA HANCOCK, P.A.
*Attorneys for Plaintiff*
12 Southeast Seventh Street, Suite 801
Fort Lauderdale, Florida 33301-3434
Telephone: (954) 763-8181
Facsimile: (954) 763-8292

By: /s/ *Joseph J. Slama*
_____
JOSEPH J. SLAMA
    Florida Bar No.: 476171
    jslama@krupnicklaw.com
MICHAEL J. RYAN
    Florida Bar No.: 975990
    mryan@krupnicklaw.com
KELLY D. HANCOCK
    Florida Bar No.: 203602
    khancock@krupnicklaw.com
BLAKE V. DOLMAN
    Florida Bar No.: 102586
    bdolman@krupnicklaw.com

and

PARKER NELSON & ASSOCIATES
*Attorneys for Plaintiff*
(Pending Admission Pro Hac Vice)
211 King Street, Suite 107
Charleston, SC 29401
Telephone: (843) 727-2500
Facsimile: (843) 727-2599

THEODORE PARKER, III
    South Carolina Bar No.: 65348
    tparker@pnalaw.net

THOMAS B. PRITCHARD
    South Carolina Bar No.: 65006
    tpritchard@pnalaw.net